Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| CARLOS MERCADER PÉREZ  Recurrido  V.  KRYSTAL LARACUENTE CORTÉS  Peticionaria | KLCE202400414 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Familia y Menores de Bayamón  Caso Núm.: GB2023RF00028  Sobre: Alimentos |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de abril de 2024.

El 10 de abril de 2024, compareció ante este Tribunal de Apelaciones, la señora Krystal Laracuente Cortés (en adelante, señora Laracuente Cortés o parte peticionaria), por medio de *Certiorari.* Mediante este, nos solicita que, revisemos la *Orden* emitida y notificada el 11 de marzo de 2024, por el Tribunal de Primera Instancia, Sala de Familia y Menores de Bayamón. En virtud del aludido dictamen, el foro *a quo* determinó no disponer sobre la *Solicitud de Desacato por Incumplimiento con la Pensión Alimentaria* presentada por la parte peticionaria, hasta tanto este foro emitiese su determinación en el caso número KLAN202400071.

Por los fundamentos que adelante se esbozan, se deniega la expedición del *certiorari.*

### I

Los eventos procesales que dan lugar al recurso que nos ocupa, son los que adelante se reseñan[1]. El 21 de marzo de 2023,

---

[1] Cabe destacar que, la parte peticionaria no acompañó a su expediente ninguno de los documentos relevantes para la disposición del caso de epígrafe, con excepción de la *Sentencia*, la solicitud de desacato y la orden recurrida. No obstante, los hechos a describirse son adoptados del caso KLAN202400071.

el señor Carlos Mercader Pérez (en adelante, señor Mercader Pérez o parte recurrida), presentó una *Solicitud de Fijación de Pensión*. Surge de dicha solicitud que, las partes son los progenitores de la menor ALML, nacida en el mes de noviembre de 2022. Según las alegaciones de la aludida solicitud, desde el nacimiento de la menor ALML, el señor Mercader Pérez, ha contribuido económicamente a los gastos de esta. En particular, había realizado una aportación de $2,167.00 mensuales, ha cubierto los gastos relacionados con los pañales y con el plan médico de la menor ALML. El señor Mercader Pérez le sometió una propuesta a la señora Laracuente Cortés, que consistía en que este asumiría el pago mensual de $2,720.00 de pensión alimentaria en beneficio de la menor ALML, los gastos de los pañales y continuaría proveyendo el plan médico MCS. Conforme a la *Solicitud de Fijación de Pensión*, el pago mensual propuesto consideraba todos los gastos de la menor ALML, y sería cubierta dentro de los primeros diez (10) días de cada mes mediante pago directo a la parte peticionaria. De igual manera, la parte recurrida expresó que, asumiría el pago anual de la matrícula y del *back to school* de la menor ALML cuando fuese el momento, al igual que asumiría cualquier gasto médico de emergencia que no fuese cubierto por el plan médico provisto. Sin embargo, en la medida en que no pudo lograrse ningún acuerdo acerca de la propuesta, solicitó que, se refiriera el asunto ante la consideración de una Examinadora de Pensiones Alimentarias (en adelante EPA) para que fuese considerada o en su defecto, para que se estableciera una pensión conforme a las Guías Mandatorias de ASUME y/o bajo la asunción de capacidad económica de la parte recurrida.

El 23 de marzo de 2023, mediante *Orden* se refirió a la EPA para evaluación y recomendación. Además, fue emitida la *Notificaci[ó]n Citaci[ó]n para Vista*, donde se les requirió a las partes

comparecer el 12 de abril de 2023 mediante videoconferencia ante la EPA.

En la misma fecha, la EPA emitió el *Acta de la Examinadora de Pensiones Alimenticias*[2]. Mediante la cual, recomendó que se mantuviese la vista de alimentos señalada por el foro *a quo* para el 12 de abril de 2023 y que se requiriera que ambas partes presentaran ante el tribunal mediante moción, el Formulario de Datos Personales, la Planilla de Información Personal y Económica (PIPE) completados, evidencia de sus ingresos y de los gastos reclamados de la menor, al menos cinco (5) días previos a la vista, de no haberse presentado previamente. Asimismo, les apercibió a las partes que, toda evidencia a utilizarse en la vista de alimentos, debía ser presentada mediante moción en el expediente digital, y que, toda evidencia que no fuese compartida entre las partes antes del señalamiento sería declarada inadmisible en la vista de alimentos.

El 24 de marzo de 2023, el foro recurrido emitió una *Orden* donde le ordenó a las partes comparecer a la vista señalada para el 12 de abril de 2023.

Más adelante, la parte peticionaria presentó la *Contestación a Demanda*. Por medio de esta, la señora Laracuente Cortés admitió que, el señor Mercader Pérez había pagado a la niñera de la menor ALML la cantidad de $2,167.00 por el cuido de esta, al igual que había pagado pañales, "toallitas" y plan médico. Sin embargo, sostuvo que, la parte recurrida no aportaba a los gastos del hogar, ni otros gastos. Indicó, además, no haber aceptado la oferta propuesta por la parte recurrida debido a que, según esta, la misma únicamente cubría el gasto de cuido en el hogar. Igualmente, aceptó que se estableciera la pensión por medio de la EPA.

---

[2] Notificada el 24 de marzo de 2023.

Para el 28 de marzo de 2023, la señora Laracuente Cortés presentó la *Moci[ó]n en Solicitud de Orden al Demandante*. Solicitó al foro primario que le ordenara a la parte recurrida expresar si iba a asumir capacidad económica o si se acogería al cálculo de las Guías Mandatorias.

En consecuencia, la primera instancia judicial, mediante *Orden* emitida el 29 de marzo de 2023, le ordenó al señor Mercader Pérez a exponerse sobre lo solicitado en el término de cinco (5) días.

Por otro lado, la parte recurrida presentó la *Moción de Réplica en Oposición y en Cumplimiento de Orden y en Solicitud de Orden para que la Demandada Someta las Evidencias de los Gastos de la Menor y su PIPE Juramentada para Poder Determinar si Asume Capacidad Económica.* Argumentó que, debido a que había realizado una propuesta de pensión alimentaria mensual que fue rechazada, ostentaba el derecho e interés en conocer las evidencias de los gastos de la menor ALML. Lo anterior, con el propósito de poder determinar si asumía capacidad económica o si por el contrario, presentaba sus ingresos para que se estableciera la pensión alimentaria en virtud de las Guías Mandatorias en beneficio de la menor ALML. Reiteró que, continuaba pagando la cantidad de $2,166.67 en concepto de pensión alimentaria para la menor ALML, al igual que los pañales cada mes. Conforme a lo anterior, solicitó al foro *a quo* que, le ordenara a la parte peticionaria el cumplimiento estricto con la *Orden* de la EPA, para presentar su PIPE juramentada con las evidencias de todos los gastos de la menor ALML, con el fin de poder estar en posición de informar si asumiría o no capacidad económica.

A tales efectos, el 30 de marzo de 2023, la primera instancia judicial emitió una *Orden,* donde declaró Con Lugar la moción presentada por la parte recurrida.

El 20 de abril de 2023, la señora Laracuente Cortés presentó la *Moción Uniendo PIPE y Documentos*.  Por su parte, el 2 de mayo de 2023, el señor Mercader Pérez presentó la *Moci[ó]n Anejando PIPE y Anejos*.

Transcurridos varios eventos procesales, innecesarios pormenorizar, el 22 de mayo de 2023, la EPA emitió el *Informe de la Examinadora de Pensiones Alimenticias* donde recomendó que se acogiera un acuerdo suscrito entre las partes y en su consecuencia se estableciera que el padre no custodio, el señor Mercader Pérez, proveyera una pensión alimentaria provisional de $2,700.00 mensuales, para beneficio de la menor ALML.

Subsiguientemente, el foro de primera instancia emitió una *Resolución*, por medio de la cual estableció la pensión alimentaria provisional de $2,700.00 mensuales por parte de la parte recurrida a beneficio de la menor ALML. Además, se les ordenó a las partes a compartir los gastos de la menor en las siguientes proporciones: el señor Mercader Pérez, el sesenta por ciento (60%) y la señora Laracuente Cortés, el cuarenta por ciento (40%) de todos los gastos médicos que no fuesen cubiertos por el plan médico, así como los gastos extraordinarios requeridos a base de reembolso.

Luego de sendas mociones presentadas por las partes, el señor Mercader Pérez presentó la *Moción Informando Aceptación de Capacidad para el Pago de la Pensi[ó]n Alimentaria de la Hija Menor de Edad*.  Por medio de la anterior, aceptó la capacidad para el pago de los gastos exclusivamente de la menor ALML que el Tribunal determinase que fueran razonables.  Esta fue declarada Ha Lugar mediante *Orden* emitida el 15 de agosto de 2023 por el foro primario.

Acaecidas múltiples incidencias procesales, innecesarias pormenorizar, el 4 de diciembre de 2023, la EPA, presentó su *Informe de la Examinadora de Pensiones Alimenticias*, en la cual realizó las siguientes Determinaciones de Hechos:

1. La Sra. Krystal Laracuente Cortés y el Sr. Carlos Mercader Pérez son los padres de la menor A.L.M.L. nacida el 1 de noviembre de 2022, cuenta con un (1) año y reside con su señora madre, la Sra. Krystal Laracuente Cortés.

2. La Sra. Krystal Laracuente Cortés es abogada en la Administración de Servicios Generales, además, es periodista y en ocasiones hace trabajos de producción. La señora Laracuente Cortés tiene una propiedad que está alquilada por $740.00. El ingreso neto mensual calculado en la vista celebrada el 22 de mayo de 2023 fue de $7,024.00.

3. La menor se beneficia de cubierta de plan médico privado provisto por el Sr. Carlos Mercader Pérez.

4. Además de la menor A.L.M.L. habida con el señor Mercader Pérez, la señora Laracuente Cortés tiene dos hijos mayores que están en tercer y cuarto grado.

5. Los gastos reportados en la PIPE de la Sra. Krystal Laracuente Cortés según juramentada el 20 de abril de 2024 son los siguientes:

| Concepto del Gasto | Cantidad del gasto mensual |
|---|---|
| Vivienda | $1,300.00 mensual |
| Hipoteca | $665.00 |
| Cuota de mantenimiento | $171.00 |
| Energía Eléctrica | $369.00 mensual |
| Celular | $103.00 mensual |
| Internet | $60.00 mensual |
| Alimentos en el hogar | $500.00 |
| Alimentos fuera del hogar | $300.00 |
| Alimentos en el hogar | $25.00 menor |
| Compra de ropa | $200.00 |
| Seguro médico | $95.00 mensual[3] |
| Deducibles | $200 anual |
| Medicinas | $500.00 anual |
| Seguro de automóvil | $1,365.00 anual |
| Otros | $39.00 |
| Cuido extendido | $2,166.00 mensual |
| Préstamo automóvil | $679.00 mensual |
| Mantenimiento | $300.00 anual |
| Estacionamiento | $30.00 mensual |
| Peaje | $30.00 mensual |
| Gasolina | $280.00 mensual |

6. Los gastos reportados en la PIPE de la Sra. Krystal Laracuente Cortés según juramentada el 22 de mayo de 2023 son los mismos que reportó en la PIPE juramentada el 20 de abril de 2023 con excepción de lo siguiente: el gasto de hipoteca reportado subió de $665.00 a $840.00 y se añadieron los gastos de pañales y wipes por $125.00 mensual y productos de higiene por $25.00 mensual.

---

[3] No se consideró debido a que el plan médico del cual se beneficia la menor es provisto por el Sr. Carlos Mercader Pérez.

7. Los gastos reportados en la PIPE de la Sra. Krystal Laracuente Cortés según juramentada el 18 de agosto de 2023 son los siguientes:

| Concepto del Gasto | Cantidad del gasto mensual |
|---|---|
| Vivienda | $1,300.00 mensual |
| Hipoteca | $840.00 |
| Cuota de mantenimiento | $171.00 |
| Energía Eléctrica | $369.00 mensual |
| Celular | $103.00 mensual |
| Internet | $65.00 mensual |
| Alimentos en el hogar | $1,000.00 |
| Alimentos fuera del hogar | $300.00 |
| Alimentos en el hogar | $25.00 menor |
| Compra de ropa | 500.00(menor) |
| Seguro médico | $95.00 mensual[4] |
| Deducibles | $200 anual |
| Medicinas | $500.00 anual |
| Seguro de automóvil | $1,365.00 anual ó $114.00 |
| Otros | $39.00 |
| Cuido extendido | $2,300.00 mensual |
| Préstamo automóvil | $679.00 mensual |
| Mantenimiento | $300.00 anual |
| Estacionamiento | $30.00 mensual |
| Peaje | $30.00 mensual |
| Gasolina | $350.00 mensual |
| Pañales y wipes | $145.00 mensual |
| Productos de higiene mensual | $25.00 |
| Leche fórmula | $138.00 mensual |

8. En el hogar donde reside la menor con la Sra. Krystal Laracuente Cortés el gasto de vivienda es de $1,300.00 y residen allí cuatro (4) personas.

9. Los siguientes gastos fueron estipulados por las partes:

- $1,300.00 de vivienda y residen cuatro personas en el hogar. A la menor le corresponde la proporción de $325.00.

- $369.00 de energía eléctrica y a la menor le corresponde la proporción de $92.25[.]

- $60.00 de agua y a la menor le corresponde la proporción de $15.00[.]

- $25.00 para los productos de higiene[.]

- $300.00 que incluye aportación para la comida y la leche de fórmula que consume la menor[.]

10. La Sra. Andrea Rivera trabaja en el hogar de la Sra. Krystal Laracuente Cortés de lunes a viernes de 9:00 a.m. a 4:00 p.m.

11. La Sra. Andrea Rivera (también se le llamó como Doña Mari durante la vista) trabaja en el hogar de la Sra. Krystal Laracuente Cortés desde el mes de noviembre de 2022 y en sus inicios fue el Sr. Carlos

---

[4] No se consideró debido a que el plan médico del cual se beneficia la menor es provisto por el Sr. Carlos Mercader Pérez.

Mercader Pérez quien contrató los servicios de la Sra. Andrea Rivera a través de una persona llamada Cristina. Es decir, la contratación de la Sra. Andrea Rivera fue con la señora Cristina y los pagos eran a través de esa persona.

12. El Sr. Carlos Mercader Pérez declaró que buscó ayuda, a través de la señora Cristina, y quien terminó trabajando en la casa de la señora Laracuente Cortés, fue la Sra. Andrea Rivera. Esto se debió a que la Sra. Krystal Laracuente Cortés, tuvo una situación delicada de salud, aproximadamente dos semanas después del parto de la menor A.L.M.L. Durante ese proceso, la señora Laracuente Cortés estuvo en cama y debido a que el hogar donde reside tiene escaleras y ella no podía bajar y subir las mismas, la ayuda consistía en hacer comida para ella y los otros menores y limpieza en el hogar además de cuidar la menor. Los pagos de forma semanal ó de forma bi-semanal y se hacían a través del dispositivo de Venmo.

13. La Sra. Krystal Laracuente Cortés no le retiene ni paga contribuciones sobre ingresos ni seguro social por las sumas que le paga a la Sra. Andrea Rivera. Tampoco paga suma alguna por concepto de bono de navidad, ni desempleo estatal o federal ni prima del fondo del seguro del Estado. Declaró que ella realiza el pago a la Sra. Andrea Rivera en los mismos términos y condiciones que cuando lo pagaba el Sr. Carlos Mercader Pérez.

14. Declaró la señora Laracuente Cortés que al comenzar ella a realizar el pago para los servicios de la Sra. Andrea Rivera, se comunicó con la señora Cristina y le preguntó directamente sobre los términos del pago que hacía el Sr. Carlos Mercader Pérez, de forma que ella continuase haciendo los mismos de la misma manera. Sobre el particular, la señora Laracuente Cortés le preguntó a la señora Cristina si ella le realizaba algún descuento a la Sra. Andrea Rivera toda vez que ya no sería la persona intermediaria.

15. La contratación y los pagos comenzaron a hacerse por parte de la Sra. Krystal Laracuente Cortés directamente a la Sra. Andrea Rivera a partir del mes de junio o julio del año 2023.

16. En algún momento, las partes visitaron el cuido "Watch me Grow" como alternativa para matricular a la menor en el mismo en octubre 202[3], además visitó la señora Larac[u]ente Cortés el cuido "Semilla" y se orientó por teléfono con otro cuido llamado "Rainforest" (este último no lo visitó).

17. Cuando lleva a cabo trabajos de producción, la señora Laracuente Cortés los realiza en diversos lugares pues depende del lugar donde se lleve a cabo la producción. En el último año, ha llevado a

cabo labores en el Coliseo de Puerto Rico, en el área del Condado, en el Tribunal Federal y en distintos municipios.

18. La señora Laracuente [Cortés] declaró que para prepararse para la producción de dichos eventos, no utilizó las facilidades de su hogar. Ahora bien, en el trabajo anterior en el cual estuvo hasta el mes de marzo de 2023, sí utilizaba las facilidades de su hogar para prepararse para dichos trabajos.

19. Surge de la demanda de alimentos presentada por el señor Mercader Pérez el 21 de marzo de 2023, que aportaba $2,167.00, para los pañales mediante una subscripción mensual por internet y además proveía el plan médico privado del cual se beneficia la menor.

20. En la residencia donde vive la señora Laracuente Cortés hay escaleras. Los cuartos quedan arriba y abajo está la cocina, la sala y el resto del hogar.

21. El día del alumbramiento la señora Laracuente Cortés tuvo complicaciones de salud. Unos días después del nacimiento de la menor[,] la señora Laracuente Cortés tuvo una recaída y tuvo que permanecer unos días en el hospital. La madre de la señora Laracuente Cortés la asistió unos días, pero informó que no podía encargarse todo el tiempo de ella y por eso el señor Mercader [Pérez] busc[ó] ayuda de una tercera persona para asistirla.

22. El señor Mercader Pérez buscó una persona que pudiese asistir a la señora Laracuente Cortés durante su proceso de recuperación, que la asistiese con las tareas del hogar y con la bebé.

23. Durante el proceso de contratación, el señor Mercader Pérez indicó que la persona venía a ayudar a la señora Laracuente Cortés con la cocina, la limpieza del hogar, si tenía que bañarse o descansar, también cuidaría de la menor, pero sus funciones no era exclusivamente el cuido de ésta.

24. El señor Mercader Pérez estuvo visitando el hogar de la señora Laracuente Cortés semanalmente, hasta finales de febrero del año 2023. Durante sus visitas, observó que la Sra. Andrea Rivera ayudaba a limpiar los cuartos de los otros dos menores y cocinaba en el hogar de la señora Laracuente Cortés. En una ocasión comió comida preparada por la Sra. Andrea Rivera.

25. Los dos hijos mayores de la señora Laracuente Cortés se fueron con el padre de éstos durante el periodo de acción de gracias en noviembre de 2022 y regresaron a su casa unos días previo a la navidad.

26. Las partes dialogaron para matricular a la menor en el cuido "Watch me grow" para el mes de febrero de 2023. Posteriormente, la señora Laracuente Cortés no quiso que la menor fuese matriculada en un cuido y prefirió que permaneciese en el hogar.

27. La posición del señor Mercader Pérez es que la menor debía estar en un cuido para que socialice con otros niños.

28. El costo de los pañales de la menor en el cual incurría el señor Mercader Pérez, para el mes de marzo de 2023 era de $35.00 a $40.00, pero declaró que varía dependiendo del tamaño del pañal. La última caja de pañales, gasto incurrido por el señor Mercader Pérez fue entregada en el hogar de la señora Laracuente Cortés el 11 de octubre de 2023 y el costo fue de $45.15.

29. Los pañales de la menor fueron entregados en la casa de la señora Laracuente Cortés en las siguientes fechas: 18 de febrero, 28 de marzo, 5 de mayo y 5 de junio y 11 de octubre del año 2023. La última caja de pampers entregada el 11 de octubre de 2023 traía ochenta (80) pampers.

30. La menor utiliza entre 7 a 8 pañales diarios para un total aproximado de 240 al mes o aproximadamente 3 cajas mensuales. El señor Mercader Pérez continuará supliendo el 100% del gasto de los pañales de la menor mediante la suscripción en Amazon y entrega en el hogar de la señora Laracuente Cortés.

31. El viernes 18 de agosto de 2023 y el lunes 21 de agosto de 2023, en el horario de 9:00 a.m. a 4:00 p.m. la hija menor de las partes estuvo en la casa con la Sra. Andrea Rivera.

32. Tanto el 18 de agosto de 2023 como el 21 de agosto de 2023, se realizaron gestiones mediante un emplazador, para diligenciar la citación de la Sra. Andrea Rivera para la vista a celebrarse el 31 de octubre de 2023, en la casa de la señora Laracuente Cortés y no fue posible.

33. Se realizó un tercer intento para diligenciar la citación dirigida a la Sra. Andrea Rivera el 23 de octubre de 2023 y tampoco fue posible.

34. Los únicos recibos de pago o facturas presentadas para evidencia[r] los gastos reportados en las PIPES de la señora Laracuente Cortés fueron los siguientes:

    a. factura de Liberty sobre el servicio del teléfono móvil por $103.92 con fecha del 5 de agosto de 2023

    b. un recibo de transferencia a cuenta de cheques con fecha de 7 de agosto de 2023 por $1,300.00

    c. un recibo de pago Popular [L]easing el cual indica que es por débito directo con fecha de 10 de agosto de 2023 por $678.65

    d. una hoja de tres pagos

        i. Millenia Park Home con fecha de 16 de mayo de 2023 por $171.00

        ii. Mastercard [B]anco [P]opular con fecha de 16 de mayo de 2023 por $30.00

        iii. Popular [L]easing débito directo con fecha de 10 de mayo de 2023 por $678.65

    e. una factura de Liberty con fecha de facturación de 14 de junio de 2023 por $68.34 sobre pago de internet.

    f. Factura de LUMA con fecha de 12 de agosto de 2023 por $662.10

    g. Transferencia de pago por ATH móvil con fecha de 5 de agosto de 2023 a Lorimar Rodríguez por $30.00.

A su vez, la EPA recomendó lo siguiente:

Recomendamos se fije que el padre no custodio, Sr. Carlos Mercader Pérez proveerá una pensión alimenticia regular de $1,847.50 mensual, para beneficio de la menor A.L.M.L. habida entre las partes. Esta pensión se pagará en pagos directamente a la Sra. Krystal Laracuente Cortés mediante cheque, dentro de los primeros cinco (1-5) días de cada mes. La pensión alimenticia es efectiva al 31 de octubre del año 2023 y se enviará a la siguiente dirección postal: Cond. Prados del Monte 1407 Basilio Cátala Guaynabo P.R. 00971. Además, el Sr. Carlos Mercader Pérez continuará pagando el 100% del costo de los pañales de la menor mediante [una] subscripción mensual por internet, mientras exista el gasto. La Sra. Krystal Laracuente Cortés le informará si hay algún cambio en el tamaño de los pañales a ser utilizados por la menor, de manera que se compren correctamente y puedan ser aprovechados por la menor.

Además, como parte de la pensión alimenticia regular, el señor Mercader Pérez asumirá el 100% de los **gastos médicos** que no cubra el plan **médico y de los gastos extraordinarios requeridos** a base de reembolso. Estos gastos extraordinarios requeridos son aquellos que como su nombre lo indica son necesarios y así lo solicita ya sea un facultativo médico, una institución educativa o un proveedor de un servicio. Los gastos extraordinarios requeridos presuponen que ambos padres (con patria potestad compartida) consintieron que su hija/hijo participara o acudiera al facultativo, institución o proveedor de servicio. Si fuese mediante

reembolso, la parte que incurra en el gasto tendrá diez (10) días contados a partir de la fecha del pago para enviarle a la otra parte la evidencia. La otra parte tendrá a su vez diez (10) días contados a partir del recibo de la evidencia para pagarle a la parte que incurrió en el costo el porciento que le corresponda de lo que refleje el/los recibos.

La menor se beneficia de cubierta de plan médico privado provista por el Sr. Carlos Mercader Pérez.

No existe deuda por el efecto retroactivo de la pensión alimenticia toda vez que la cuantía de la pensión alimenticia total resultó ser menor a la provisional y es efectiva a la fecha de la determinación.

Por ser una pensión alimenticia a pagarse de forma directa, ambas partes deberán conservar el registro de los pagos realizados y recibidos.

Conceda y fije una suma razonable por honorarios de abogado por la comparecencia a tres vistas.

Instruya a ambas partes de su responsabilidad de informar al Tribunal de cualquier cambio de dirección, patrono o salario que tengan.

Consecuentemente, en igual fecha, el Tribunal de Primera Instancia emitió *Sentencia* en la cual acogió las recomendaciones de la EPA y las hizo formar parte de esta, por lo que dictó lo siguiente:

[........]

**En consecuencia, se establece la pensión alimenticia regular que debe proveer el padre no custodio, Sr. Carlos Mercader Pérez, para beneficio de la menor A.L.M.[L]., en la suma de $1,847.50 mensual efectiva al 31 de octubre de 2023 y a ser pagada directamente a la Sra. Krystal Laracuente Cortés, mediante cheque. El pago de la pensión alimenticia mediante cheque será enviada a la siguiente dirección postal: Cond. Prados del Monte 1407 Basilio Cátala Guaynabo, P.R. 00971. Además, el Sr. Carlos Mercader Pérez continuará pagando el 100% del costo de los pañales de la menor mediante la subscripción mensual por internet, mientras exista el gasto. La Sra. Krystal Laracuente Cortés le informará si hay algún cambio en el tamaño de los pañales a ser utilizados por la menor, de manera que se compren correctamente y puedan ser aprovechados por la menor.**

Se ordena al padre, **Sr. Carlos Mercader Pérez[,] cubrir el 100% de todos los gastos médicos que no cubra el plan médico** a base de reembolso. **La parte que incurra en el gasto tendrá diez (10) días a partir de haber incurrido en el mismo para presentarle evidencia a la otra parte y la otra parte a su vez,**

**tendrá diez (10) días para reembolsar el por ciento que corresponda de los recibos o facturas.**

Se ordena al padre, **Sr. Carlos Mercader Pérez[,] cubrir el 100% de los gastos extraordinarios requeridos** a base de reembolso. Estos gastos extraordinarios requeridos son aquellos que como su nombre lo indica son necesarios y así lo solicita ya sea un facultativo médico, una institución educativa o un proveedor de un servicio. Los gastos extraordinarios requeridos presuponen que ambos padres (con patria potestad compartida) consintieron que su hija/hijo participara o acudiera al facultativo, institución o proveedor de servicio. Si fuese mediante reembolso, la parte que incurra en el gasto tendrá diez (10) días contados a partir de la fecha del pago para enviarle a la otra parte la evidencia. La otra parte tendrá a su vez diez (10) días contados a partir del recibo de la evidencia para pagarle a la parte que incurrió en el costo el porciento que le corresponda de lo que refleje el/los recibos.

Se ordena que la menor A.L.M.L. se beneficia del plan médico privado provisto por el Sr. Carlos Mercader Pérez.

Se ordena que no existe deuda por el efecto retroactivo de la pensión alimenticia.

Se apercibe a las partes sobre su deber continuo de informar al Tribunal, a la ASUME y a la otra parte cualquier cambio de dirección física, postal, de patrono, indicando en tal caso el nombre, dirección postal y número de teléfono del nuevo patrono. También deberá informar sobre la disponibilidad de póliza de seguro médico. Todo lo anterior tan pronto ello ocurra.

Se conceden $500.00 de honorarios de abogado a favor de la **Sra. Krystal Laracuente Cortés** por las vistas celebradas a ser pagados por el **Sr. Carlos Mercader Pérez** en el término de 50 días.

Se apercibe a las partes que cualquier cambio en las circunstancias de la persona custodia, de la persona no custodia y del o de la menor alimentista deberá ser notificada de inmediato mediante moción al Tribunal. Se les apercibe que de no cumplir con lo aquí ordenado es una violación a la ley y podrá conllevar la imposición de multas, penalidades, intereses, honorarios, gastos y costas y, además, desacato civil o criminal.

Se les apercibe, además, de su derecho a solicitar modificación de la pensión alimenticia cada tres (3) años desde la fecha en que la orden fue establecida y en cualquier momento, fuera del ciclo de tres (3) años, cuando exista justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias.

De conformidad con la Orden Administrativa Núm. OAN-2003-03 del 26 de septiembre de 2003, la secretaria del Tribunal deberá notificar a las partes copia del informe de la Examinadora y de la correspondiente hoja de trabajo. Los cómputos están incluidos en el informe.

Se le apercibe, además, al **Sr. Carlos Mercader Pérez y la Sra. Krystal Laracuente Cortés** que, si incumplen con cualquier pago correspondiente a la pensión alimenticia regular aquí fijada o con cualesquiera de las órdenes contenidas en esta Sentencia, el Tribunal podrá declararle incurso en desacato y ordenar su encarcelamiento.

(Énfasis en el original)

En desacuerdo con tal determinación, el 19 de diciembre de 2023 la parte apelante presentó *Solicitud de Reconsideración*. La misma fue declarada No Ha Lugar por el Tribunal de Primera Instancia mediante *Orden* emitida el 20 de diciembre de 2023.

Aun inconforme, el 19 de enero de 2024, la parte peticionaria acudió ante este foro revisor por medio de recurso de *Apelación*. Posteriormente, la parte recurrida presentó el *Alegato en Oposición a "Apelación"*. Revisadas las posturas de las partes, el 25 de marzo de 2024, emitimos *Sentencia*, donde confirmamos lo determinado por el foro primario.

Mientras la apelación de la *Sentencia* emitida por el foro primario se encontraba ante este Tribunal, el 11 de marzo de 2024, la parte peticionaria presentó ante el foro *a quo* la *Solicitud de Desacato por Incumplimiento con la Pensión Alimentaria*. A través de esta, argumentó que, desde el mes de diciembre de 2023, no recibía las tres (3) cajas mensuales de pañales que venía obligado a proveer el señor Mercader Pérez. Indicó que, debido a lo anterior, tuvo que incurrir en el gasto de comprar los pañales durante los meses de enero, febrero y marzo de 2024. A tales efectos, solicitó el reembolso a su favor, a razón de $135.00 por tres (3) meses, y que dicho pago se incluyera como parte de la pensión alimentaria. Solicitó, además, la imposición de honorarios de abogado a su favor.

El 11 de marzo de 2024, la primera instancia judicial emitió la *Orden* cuya revisión nos ocupa. En virtud de esta dispuso que "[n]o se dispondrá hasta tanto el Tribunal de Apelaciones emita su determinación en el caso número KLAN202400071".

Insatisfecha, la parte peticionaria presentó una *Reconsideración,* que fue declarada No Ha Lugar por el foro primario mediante *Orden* emitida y notificada el 13 de marzo de 2024.

En desacuerdo, la parte peticionaria acudió ante este foro revisor por medio de *Certiorari* y esgrimió el siguiente señalamiento de error:

> Erró y abusó de su discreción el TPI, mediando pasión, perjuicio y error manifiesto, al emitir una determinación paralizando la orden de pago de alimentos, al negarse a disponer de la solicitud de desacato por el incumplimiento con dicho pago, hasta tanto el Tribunal de Apelaciones disponga del caso KLAN202400071.

Por otro lado, el 22 de abril de 2024, el señor Mercader Pérez presentó la *Breve Oposición a Expedición de "Certiorari".*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez,* 2023 TSPR 46, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020)[5]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40,

---

[5] Véase también *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009).

dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 847. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no

ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis Nuestro).
> [. . .]

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. Véase *Torres González v. Zaragoza Meléndez*, supra, pág. 847.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Efecto de la presentación de recursos ante los tribunales apelativos

En *Colón y otros v. Frito Lays*, 186 DPR 135, 146 (2012), el Tribunal Supremo de Puerto Rico se expresó en torno al efecto de la presentación de recursos ante los tribunales apelativos. Sobre este particular, expresó que, "[l]as Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010), regulan los asuntos atinentes a los procedimientos posteriores a la sentencia. Específicamente, en la Regla 52.3 se pormenorizan las implicaciones que tiene, en los procedimientos ante el tribunal recurrido, el presentarse o expedirse un recurso por un tribunal de superior jerarquía. Dicha regla provee lo siguiente:

> (a) Una vez presentado el escrito de apelación, se suspenderán todos los procedimientos en los tribunales inferiores respecto a la sentencia o parte de ésta de la cual se apela, o las cuestiones comprendidas en ella, salvo orden en contrario, expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación; pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión involucrada en el

mismo no comprendida en la apelación. Disponiéndose, que no se suspenderán los procedimientos en el Tribunal de Primera Instancia cuando la sentencia disponga la venta de bienes susceptibles de pérdida o deterioro, en cuyo caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes sean vendidos y su importe depositado hasta tanto el tribunal de apelación dicte sentencia".

[. . .]

A su vez, la Regla 18 del Reglamento del Tribunal de Apelaciones[6], dispone lo concerniente a los efectos de la presentación de una apelación en un caso civil. Dicha regla dispone como sigue:

(A) *Suspensión.*-Una vez presentado el escrito de apelación, se suspenderán todos los procedimientos en el Tribunal de Primera Instancia respecto a la sentencia, o parte de la misma, de la cual se apela, o a las cuestiones comprendidas en ella, salvo orden en contrario, expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones; pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión no comprendida en la apelación.

(B) *Cuándo no se suspenderá.*-No se suspenderán los procedimientos en el Tribunal de Primera Instancia cuando la sentencia dispusiere la venta de bienes susceptibles de pérdida o deterioro. En ese caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes sean vendidos y su importe depositado hasta tanto el tribunal de apelación dicte sentencia.
No se suspenderán los efectos de una decisión apelada, salvo una orden en contrario expedida por el Tribunal de Apelaciones, por iniciativa propia o a solicitud de parte, cuando ésta incluya cualesquiera de los remedios siguientes:

(1) Una orden de injunction, de mandamus o de hacer o desistir;

(2) Una orden de pago de alimentos.

(3) Una orden sobre custodia o relaciones filiales.[7]

Nuestra última instancia judicial dispuso, además, en *Colón y otros v. Frito Lays*, supra, págs. 148-149, que, cuando se trata de recursos de *certiorari*, es la Regla 35 del Reglamento del Tribunal de Apelaciones la que fija los efectos de su presentación, dependiendo

---

[6] 4 LPRA Ap. VI, R. 18.
[7] *Colón y otros v. Frito Lays*, supra, págs. 147-148.

de si se trata de un caso civil o de uno criminal. Dicha regla dispone de la siguiente manera:

(A) *En casos civiles.-*

(1) La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de certiorari suspenderá los procedimientos en el Tribunal de Primera Instancia, salvo que el Tribunal de Apelaciones disponga lo contrario.

(2) Si la resolución recurrida dispusiera la venta de cosas susceptibles de pérdida o deterioro, el Tribunal de Primera Instancia podrá ordenar que se vendan las mismas y que se deposite su importe hasta que el Tribunal de Apelaciones resuelva el recurso.

(3) No se suspenderán los efectos de una decisión recurrida, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones, que incluya cualquiera de los remedios siguientes:

(a) Una orden de *injunction,* de *mandamus* o de hacer o desistir.

(b) una orden de pago de alimentos.

(c) una orden sobre custodia o relaciones filiales.

En resumen, lo que suceda en los procedimientos, y como consecuencia, en la jurisdicción del tribunal recurrido, una vez se acude en alzada, variará según el tipo de recurso instado. Es decir, dependerá de si se trata de un recurso de apelación o de *certiorari* y de la naturaleza civil o criminal de la acción. Debido a las importantes implicaciones de índole jurisdiccional que ello conlleva, los tribunales concernidos deben estar atentos al desarrollo del caso a nivel del tribunal revisor y a la etapa procesal en la que éste se encuentra, previo a retomar acción en el mismo. *Colón y otros v. Frito Lays,* supra, pág. 150.

Una vez el tribunal de superior jerarquía adquiere jurisdicción sobre el asunto presentado para su revisión y emite una determinación que adviene final y firme, tienen que coincidir ciertas condiciones procesales para que el tribunal recurrido vuelva a

adquirir jurisdicción sobre el caso. El Tribunal Supremo de Puerto Rico se refiere, específicamente, a la remisión del mandato. *Íd.*

### C. Manejo de Sala

Como es sabido, nuestra más Alta Curia ha reconocido que, los foros de instancia gozan de amplia discreción en la tramitación de los casos ante su consideración, de manera que, se pueda asegurar la más eficiente administración de la justicia. *Vives Vázquez v ELA*, 142 DPR 117 (1996); *Molina v. Supermercado Amigo, Inc.,* 119 DPR 330 (1987). Conforme a ello, con el propósito de mantener un funcionamiento efectivo de nuestro sistema judicial, y de que se dispongan los asuntos litigiosos de forma rápida, es necesario que los juzgadores de instancia ostenten "gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales". *In re Collazo I,* 159 DPR 141 (2003). Ello implica que, estos deberán gozar de poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar aquellos correctivos apropiados, de acuerdo a su buen juicio[8]. En virtud de estos poderes, los foros de instancias tienen disponibles múltiples mecanismos procesales para asegurar y mantener el orden de los procedimientos que atienden, para hacer cumplir sus órdenes y para realizar cualquier acto necesario para cumplir a cabalidad sus funciones. *Íd.*; *ELA v. Asoc. de Auditores*, 47 DPR 669 (1999).

Nuestra última instancia judicial ha señalado que, "[e]specíficamente, la discreción ha de ceder en las circunstancias en las que se configura: un craso abuso de discreción o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un

---

[8] *Íd.* pág. 150.

perjuicio sustancial a la parte afectada por su determinación." *Banco Popular de Puerto Rico v. Andrés Gómez Alayón y otros,* 2023 TSPR 145, 212 DPR ___ (2023).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no [hay] duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 435.

Si la actuación del tribunal de instancia no se encuentra desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, prevalecerá el criterio del juzgador de hechos a quien le corresponde la administración del proceso para disponer de los procedimientos ante su consideración. *Sierra v. Tribunal Superior,* 81 DPR 554 (1959).

**III**

Conforme surge del tracto procesal reseñado, la parte peticionaria, previo a la presentación del recurso de epígrafe, había presentado el escrito de apelación KLAN202400071 ante esta Curia, el 19 de enero de 2024. El 25 de marzo de 2024, emitimos *Sentencia* mediante la cual confirmamos la determinación del foro primario en su *Sentencia* del 4 de diciembre de 2023. Posteriormente, la parte peticionaria solicitó reconsideración, la cual está pendiente de

adjudicación por no haber discurrido el término concedido a la parte recurrida para expresarse en torno a la misma.

Aún sin que el dictamen adviniera final y firme, la parte peticionaria presentó el recurso de *certiorari* que nos ocupa, en el cual nos solicita que revisemos la *Orden* emitida por la primera instancia judicial, donde determinó que no dispondría de la solicitud de desacato presentada por la parte peticionaria hasta tanto se resolviera el recurso del caso KLAN202400071.[9]

De acuerdo al derecho expuesto, los procedimientos no se encuentran paralizados ante el Tribunal de Primera Instancia, al tratarse de una orden de pago de alimentos conforme a la Regla 18 (B)(2) del Reglamento del Tribunal de Apelaciones[10]. Sin embargo, colegimos que, no vamos a intervenir con el manejo de sala del foro de primera instancia. Debido a que los procedimientos no se encuentran paralizados, el foro de primera instancia podrá entender en el mismo conforme mejor disponga y a su calendario.

En vista de lo anterior, nos resulta forzoso concluir que, en vista de que no ha mediado pasión, prejuicio, parcialidad o error manifiesto[11], no vemos razón para variar la decisión recurrida.

Por último, no obstante, lo aquí resuelto no impide que la parte peticionaria comparezca nuevamente ante este Tribunal dentro del término jurisdiccional dispuesto por nuestro ordenamiento legal, ello, una vez sea emitido el mandato y el foro *a quo* resuelva su petición.

**IV**

Por los fundamentos que anteceden, se deniega la expedición del recurso de epígrafe.

Notifíquese.

---

[9] Dicho petitorio es por alegadamente no haber suplido los pañales de la menor ALML.

[10] 4 LPRA Ap. VI, R. 18.

[11] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022).

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones